### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| CARENEXA, LLC fka BLACKFLY INVESTMENTS, LLC, dba MOLECULAR TESTING LABS, a Washington limited liability company, | § § § § § | |
| Plaintiff, | § § | Civil Action No. 1:25-cv-550 |
| v. | § § | |
| NTIRETY, INC., a Delaware corporation, | § | |
| Defendant | | |

### <u>MOLECULAR TESTING LABS'S ORIGINAL COMPLAINT</u>

Plaintiff CareNexa, LLC, fka Blackfly Investments, LLC, dba Molecular Testing Labs ("MTL") files this Complaint against Defendant Ntirety, Inc., individually and as successor to Hostway Services, Inc. ("Ntirety"), and alleges as follows:

### I.    NATURE OF THE ACTION

1.    This action arises from Ntirety's failure to secure and safeguard the Protected Health Information ("PHI") of MTL patients from a critical cybersecurity attack and Ntirety's subsequent failure to satisfy its indemnification obligations under the HIPAA Business Associate Agreement (the "BAA") between the parties. MTL seeks damages arising from Ntirety's breach.

### II.    PARTIES

2.    MTL is a limited liability company formed under the law of the State of Washington with its principal place of business in Vancouver, Washington. Each member of MTL is a citizen of Washington or Texas. Thus, MTL is a citizen of Washington and Texas.

3.      Ntirety is a corporation formed under the laws of the State of Delaware with its principal place of business in Chicago, Illinois. Thus, Ntirety is a citizen of Delaware and Illinois. Ntirety is the corporate successor to Hostway Services, Inc. for purposes of the BAA.

## II.      JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00 and there is complete diversity of parties because MTL and Ntirety are citizens of different states. *See* 28 U.S.C. § 1332(a)(1).

5.      This Court has personal jurisdiction over Ntirety because MTL's claims arise out of Ntirety's activities in Austin, Texas. Specifically, Ntirety's data center hosting MTL's patient PHI that was subject to a cybersecurity attack is located in Austin, Texas.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims—namely, the cybersecurity breach of Ntirety's Austin data center hosting MTL's patient PHI—occurred in this District.

## III.      STATEMENT OF FACTS

### The Role of HIPAA

7.      The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") is at the core of this dispute. HIPAA is a federal law that governs the use and release of an individual's health records, or PHI.

8.      Under HIPAA, the term "Covered Entity" includes healthcare providers. MTL is a medical diagnostic laboratory specializing in molecular and genetic testing. As a laboratory, MTL is a Covered Entity subject to HIPAA, and much of the data it collects, manages, and stores in the course of its business constitutes protected PHI.

9.      HIPAA requires Covered Entities like MTL to enter into Business Associate Agreements when they intend to share PHI with another person or entity (*i.e.*, a "Business Associate") to do work on its behalf. Data hosting and security providers—like Ntirety—that receive PHI from a Covered Entity are considered Business Associates under HIPAA. Business Associate Agreements outline how the Covered Entity's PHI should be handled and protected by a Business Associate.

## The BAA

10.     MTL and Ntirety executed the BAA on September 28, 2018. *See* Ex. A (the BAA). Consistent with the requirements of Business Associate Agreements generally and MTL's interest in protecting the PHI of its patients specifically, the BAA states that it is intended "to ensure that [Ntirety] will establish and implement appropriate safeguards" for any PHI that it "may receive, create, maintain, use or disclose in connection with the functions, activities and services that Business Associate performs for [MTL]." *Id*., § 1.02.

11.     Indeed, the BAA explicitly requires Ntirety "to use appropriate safeguards, and comply with [security standards for the protection of electronic PHI ("ePHI") established in the Code of Federal Regulations ("CFR")] to prevent use or disclosure of PHI other than as provided for by the BAA." *Id*., § 2.02.

12.     Likewise, the BAA requires Ntirety to "comply with the HIPAA Security Rule," which also refers to security standards for the protection of electronic PHI established in the CFR, "as amended by ARRA and the HITECH Act." *Id*., § 4.02. To meet Security Rule requirements, Ntirety must "reasonably and appropriately protect the confidentiality, integrity, and availability of the ePHI that it creates, receives, maintains or transmits" on MTL's behalf by implementing

administrative, physical, and technical safeguards, as well as policies and procedures, set forth in certain identified CFR sections. *Id.*

13.    The BAA also imposes the following indemnification obligations on Ntirety:

> [Ntirety] shall indemnify, defend and hold harmless [MTL], its sponsor, if different from [MTL], and sponsor's and [MTL]'s affiliates ("Indemnified Parties"), from and against any and all losses, expense, damage or injury (including, without limitation, all costs and reasonable attorneys' fees) that the Indemnified Parties may sustain as a result of, or arising out of (a) a breach of this BAA by [Ntirety] or its agents or Subcontractors, including but not limited to any unauthorized use, disclosure or breach of PHI, (b) [Ntirety's] failure to notify any and all parties required to receive notification of any Breach of Unsecured PHI pursuant to Section 2.4[1] or (c) any negligence or wrongful acts or omissions by [Ntirety]or its agents or Subcontractors, including without limitations, failure to perform [Ntirety's] obligations under this BAA, the Privacy Rule or the Security Rule.

*Id.*, Art. V.

14.    Significantly, the BAA—consistent with the HIPAA statute and rules—contains no warranty disclaimers, limitations or exceptions to liability, or dollar caps on liability. Thus, Ntirety is, as the BAA explicitly states, obligated to fully indemnify MTL for *all* of its "losses, expense, damage or injury (including, without limitation, all costs and reasonable attorneys' fees)" related to, caused by, or arising out of Ntirety's failures to protect and secure MTL's PHI. *See id.*

**Ntirety's Security Deficiencies and the Resulting Data Breach**

15.    On or about March 12, 2025, MTL received information indicating that a material data breach may have occurred involving MTL data that was required to have been secured by Ntirety under the BAA. Upon receiving this information, MTL immediately retained highly

---

[1] Ntirety must indemnify MTL for costs associated with providing notice to MTL patients of any Breach of Unsecured PHI or Security Incident (as those terms are defined by the HIPAA statute and rules) as required under HIPAA. *See Id.*, § 2.04(b). Ntirety also agreed that, should such notice be necessary, it would "include, at the expense of [Ntirety], one (1) year of credit reporting through LifeLock to any individual receiving notification of Breach of Unsecured PHI." *Id.*

qualified technical and legal experts to investigate, assess, and remedy any possible data breach (the "Forensic Investigation").

16.     MTL also immediately sought assistance from Ntirety. Ntirety had clear and substantial obligations under the BAA and HIPAA rules and regulations to, *at a minimum*, assist and support MTL in its efforts to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that may be related to a data breach involving its purportedly secure systems and processes. Ntirety nonetheless failed to provide material support to MTL for weeks, and the support it eventually did offer was provided slowly and incompetently. Ntirety even informed MTL at one point that it would impose an additional charge on MTL for such efforts.

17.     The Forensic Investigation has confirmed that some PHI under Ntirety's management, control, and protection pursuant to the BAA had been breached (the "Data Breach") by unknown threat actors, possibly of Russian origin based on their use of certain Cyrillic alphabet characters (the "Threat Actors"). The Threat Actors demanded ransom payments from MTL to prevent public disclosure of the PHI and other sensitive information.

18.     The Forensic Investigation has also determined that significant deficiencies, shortcomings, and omissions in Ntirety's technical and administrative systems, procedures, and practices (the "HIPAA Deficiencies") had been exploited by the Threat Actors to breach PHI and other confidential information maintained within Ntirety's computer systems. It further concluded that the same HIPAA Deficiencies that permitted the Threat Actors to access Ntirety's computer systems *also* allowed the Threat Actors to breach PHI and other confidential information maintained within MTL's computer systems.

19.     The Forensic Investigation thus strongly indicates that the Data Breach was directly caused by Ntirety's wrongful and negligent failures to (i) establish and implement appropriate safeguards for the protection of PHI, (ii) comply with the HIPAA Security Rule, and (iii) implement the administrative, physical, and technical safeguards, and the policies and procedures, set forth in the HIPAA rules and regulations to reasonably and appropriately protect the confidentiality, integrity, and availability of PHI.

20.     Each of these failures constitute a violation of Ntirety's obligations to MTL under the BAA.

### MTL's Damages and Request for Indemnification by Ntirety

21.     MTL has incurred damages resulting from Ntirety's failures to comply with its obligations under the BAA and HIPAA rules and regulations, and MTL anticipates that it will continue to incur damages related to the Data Breach in the future, including damages associated with remediation efforts, HIPAA notification requirements, possible legal and regulatory actions, and direct and indirect harm to MTL's business.

22.     MTL has already incurred damages related to the Forensic Investigation conducted to date and expects to incur additional costs as the Forensic Investigation continues.

23.     MTL has already incurred damages, and anticipates incurring additional damages, related to its remediation efforts in compliance with its legal and regulatory obligations to mitigate the serious harm caused by Ntirety's HIPAA Deficiencies and the resulting Data Breach.

24.     MTL also expects that it will incur damages associated with providing impacted patients with PHI breach notifications and credit monitoring services, as required under HIPAA.

25.     MTL will likely suffer harm to its business as a consequence of the Data Breach caused by Ntirety's HIPAA Deficiencies and failure to comply with the BAA. MTL anticipates

that this Data Breach will damage MTL's reputation in the medical diagnostics industry and financially harm MTL.

26.     MTL further believes that it could be subject to lawsuits and regulatory actions as a result of that the Data Breach caused by Ntirety's HIPAA Deficiencies and failure to comply with the BAA.

27.     On March 25, 2025, and April 3, 2025, MTL sent Ntirety formal demands for indemnification under the BAA for the losses, costs, expenses, damages, and injuries it has incurred and will incur as a result of the Data Breach.

28.     As of the date of this Complaint, Ntirety has provided no substantive response to MTL's indemnification demands.

## IV.    CAUSES OF ACTION

### Count One: Breach of Contract
### <u>Indemnification</u>

29.     MTL incorporates each of the foregoing paragraphs as if fully set forth herein.

30.     The rights and obligations of the parties related to the Data Breach caused by Ntirety's HIPAA Deficiencies are governed by the BAA.

31.     The BAA is an existing valid contract.

32.     MTL has fulfilled all of its obligations under the BAA.

33.     Ntirety has materially breached its obligations under the BAA.

34.     The BAA's indemnification provision requires Ntirety to indemnify, defend, and hold MTL harmless "from and against any and all losses, expense, damage or injury (including, without limitation, all costs and reasonable attorneys' fees)" that MTL sustains as a result of certain defined conduct. Ex. A, Art. V.

35.    Specifically, Ntirety is obligated to indemnify, defend, and hold MTL harmless "from and against any and all losses, expense, damage or injury (including, without limitation, all costs and reasonable attorneys' fees)" that MTL sustains as a result of Ntirety's breach of the BAA, which includes but is not limited to "any unauthorized use, disclosure, or breach of PHI." *Id.*

36.    MTL's Forensic Investigation has established that some patient PHI that was under Ntirety's management, control, and protection pursuant to the BAA has been subjected to "unauthorized use, disclosure, or breach" due to Ntirety's HIPAA Deficiencies.

37.    Ntirety is further obligated to indemnify, defend, and hold MTL harmless "from and against any and all losses, expense, damage or injury (including, without limitation, all costs and reasonable attorneys' fees)" that MTL sustains as a result of "any negligence or wrongful acts or omissions" by Ntirety, which includes but is not limited to "failure to perform [Ntirety's] obligations under the BAA, the Privacy Rule or the Security Rule." *Id.*

38.    MTL's Forensic Investigation has established that the Data Breach was caused by Ntirety's HIPAA Deficiencies. Those HIPAA Deficiencies could not have occurred if Ntirety was performing its obligations under the BAA, the Privacy Rule, or the Security Rule.

39.    As a direct and proximate result of Ntirety's breach of contract, MTL has suffered and continues to suffer damages in an amount to be determined at trial.

40.    MTL's claims against Ntirety arise from a Data Breach caused by Ntirety's HIPAA Deficiencies and failure to comply with the BAA, implicating Ntirety's indemnification obligations under the BAA.

41.    Accordingly, Ntirety is required to indemnify, defend, and hold MTL harmless from all losses, expenses, damages, or injuries it has suffered, and continues to suffer, as a result of the Data Breach. Therefore, MTL seeks indemnification from Ntirety for any and all losses,

expenses, damages, or injuries (including attorneys' fees) that has incurred and continues to incur as a result of the Data Breach.

42.     MTL's losses, expenses, damages, or injuries may include, but not be limited to costs and expenses of the Forensic Investigation; mitigation costs and expenses; costs and expenses of compliance with Data Breach notification requirements, including provision of credit monitoring services; legal fees and costs associated with any third-party civil litigation and regulatory claim exposure; legal fees and costs associated with this lawsuit; losses, costs, and expenses stemming from business losses and reputational harm. To date, Ntirety has failed to respond to MTL's demands for indemnification under the BAA.

43.     MTL is entitled to damages for any losses, costs, expenses, damages, and injuries it has incurred and will incur as a result of the Data Breach, the amount of which will be proved at trial.

## Count Two: Declaratory Judgment
## Future Obligations and Continuing Jurisdiction

44.     MTL incorporates each of the foregoing paragraphs as if fully set forth herein.

45.     As established above, MTL is, in accordance with the terms of the BAA, entitled to indemnification by Ntirety for all losses, expenses, damages, or injuries it has suffered, and continues to suffer, as a result of the Data Breach.

46.     Because the exact magnitude of MTL's damages stemming from these losses, costs, expenses, damages, and injuries remains unknown or unresolved at this time, MTL requests that the Court issue an Order finding and declaring that (1) Ntirety is obligated to fully indemnify and defend MTL from future harms arising from this and related incidents, including the harms set forth above; and (2) the Court is retaining jurisdiction over the parties and the subject matter of this action to ensure that Ntirety continues to honor its indemnification obligations to MTL for so

long as such obligations arise, and to resolve any disputes arising from or related to the interpretation, implementation, or enforcement of the Court's orders regarding indemnifiable losses, costs, expenses, damages, or injuries that manifest themselves after the date of the Order.

## V.    PRAYER FOR RELIEF

WHEREFORE, as set forth in detail above, MTL respectfully prays that the Court award the following:

a.    Judgment against Ntirety for the indemnification of MTL for all losses, costs, expenses, damages, and injuries caused by, relating to, or arising out of the Data Breach in the amount proved at trial;

b.    A declaratory judgment that (1) Ntirety is obligated to fully indemnify and defend MTL from future harms arising from this and related incidents, including the harms set forth above; and (2) the Court will retain jurisdiction over the parties and the subject matter of this action to ensure that Ntirety continues to honor its indemnification obligations to MTL for so long as such obligations arise, and to resolve any disputes arising from or related to the interpretation, implementation, or enforcement of the Court's orders regarding indemnifiable losses, costs, expenses, damages, or injuries that manifest themselves after the date of the Order;

c.    Damages for loss of sales, lost revenue, loss of business reputation and goodwill;

d.    Attorneys' fees and all court costs pursuant to Article V of the BAA;

e.    Prejudgment and post-judgment interest as allowed by law;

f.    The costs and expenses of bringing this action; and

g.    Such other and further relief, at law or in equity, as the Court deems just and equitable.

DATED: April 11, 2025                    Respectfully submitted,

                                         */s/ Ryan A. Botkin*
                                         Ryan A. Botkin
                                         State Bar No. 00793366
                                         ryan@bccaustin.com
                                         Erin M. Eckhoff
                                         State Bar No. 24090910
                                         erin@bccaustin.com
                                         Joshua A. Kelly
                                         State Bar No. 24116605
                                         josh@bccaustin.com

                                         **BOTKIN CHIARELLO CALAF PLLC**
                                         1209 Nueces Street
                                         Austin, Texas 78701
                                         T: (512) 960-4730
                                         F: (737) 289-4695